NEWARK PASSENGER RAILWAY COMPANY, PLAINTIFF IN ERROR, v. JOHN KELLY, DEFENDANT IN ERROR.

The provisions of section 3 of the "Act supplemental to an act entitled 'An act relative to the Supreme and Circuit Courts,' approved March twenty-seventh, eighteen hundred and seventy-four," and also for the appointment of three judges to hold said Circuit Courts and to define their powers," which act was approved March 9th, 1893 (*Pamph. L., p.* 158), are not obnoxious to any constitutional prohibition.

On error to the Supreme Court. In tort.

For the plaintiff in error, *Edward Q. Keasbey* and *Joseph Coult*.

This writ of error brings the record of a judgment rendered in the Supreme Court upon a verdict of a jury in a case tried before the Circuit judge under the act of March 9th, 1893, providing for the appointment of three judges of the Circuit Court and defining their powers.

It appears by the *postea* forming part of this record that the issue was sent to Essex county for trial, and that at a Circuit Court holden at Newark before his Honor David A. Depue, a justice of the Supreme Court, on the 2d day of December, according to the form of the statute came the parties by their attorneys, and that a jury having been waived, the matter was, by consent of the parties, in accordance with the statute, referred for trial to Francis Child, the judge holding the Circuit Court, and that the Circuit judge having reported that the trial of the case was had before him and before a jury, and resulted in a verdict for the plaintiff in the sum of $12,000, as rendered by the jury impaneled to try this cause on the 23d day of November, 1893, thereupon the justice of the Supreme Court said that the defendant was guilty of the grievances laid to its charge, and he assessed the plaintiff's damages at $12,000.

It appears, therefore, that the judgment is based upon an assessment of damages made by the Supreme Court justice on December 2d, 1893, upon the report made to him of a trial had before Francis Child, a judge of the Circuit Court, to whom the matter was referred by consent of parties and before a jury, although a jury had been waived, and that the report was not the finding of the referee, but a statement of the result of the verdict of a jury impaneled to try the cause on November 23d.

The *postea* takes the form of an assessment of damages made by the justice of the Supreme Court upon the report of a referee, but it appears on the face of the *postea* that the report of the referee was based, not upon his own decision, but upon the verdict of a jury, in a trial held before him and

MARCH TERM, 1895. 657

*28 Vroom.* Newark Pass. Ry. Co. v. Kelly.

the jury. It also appears from the *postea* that the reference to Francis Child, the judge holding the Circuit Court of the county, was made in accordance with the statute in such cases made and provided. What statute is referred to is not stated, but the only statute that can be cited to justify the extraordinary procedure described in this *postea* is the act of March 9th, 1893, above mentioned, entitled "An act supplemental to an act entitled 'An act relating to the Supreme and Circuit Courts,'" approved March 27th, 1874, and also for the appointment of three Circuit judges and to define their powers.

The third section of this act provides for a proceeding similar to, but not the same as, that described in the *postea*.

This section is as follows:

"And be it enacted, That the issues of the Supreme Court, when set down for trial, may be disposed of by consent of the parties in the manner following, to wit: a jury being waived, the justice of the Supreme Court may refer the matter for trial to the judge holding the county Circuit Court of the given county, who shall thereupon proceed to try the cause, either with or without a jury, as the said parties may agree; and the result of said trial having been reported to the said justice, the same shall be received as conclusive evidence in the trial before him, and the Supreme Court shall be authorized to grant new trials in such procedures, as in other cases."

This does not provide for a report of a referee upon which judgment may be ordered to be entered, but declares that the result of a trial, either with or without a jury, as the parties may agree, reported by the Circuit judge, shall be conclusive evidence on the trial before the justice of the Supreme Court.

Without stopping to inquire whether the *postea* has followed this statute, we insist that the case was not tried before a justice of the Supreme Court, but that judgment was given by the Supreme Court upon a trial had before a judge and jury who had no jurisdiction to try issues in that court.

The statute provides that a trial before a judge of another court, with or without a jury, as the parties may agree, shall

be taken as conclusive evidence in a trial in the Supreme Court. This, in effect, substitutes the trial before that judge and jury for a trial before the judge designated by the constitution to conduct trials in that court. The *postea*, without saying that the parties have agreed to a trial before a jury, which, in fact, appears to have been waived and not agreed to, declares that the Supreme Court justice assessed the damages upon the report of the judge and the verdict of a jury.

The trial, therefore, whether it was in accordance with the statute or not, was a trial before a judge and jury which formed no part of that court, and the case was not tried by the judge appointed to hold the court.

The jurisdiction of the court to try issues joined therein has been delegated to a person having no constitutional power to try issues in that court.

· The court itself, as constituted on that occasion, was wholly incompetent to try cases and render a judgment in a procedure of that character, and the legislature could not make such a proceeding legal.

The judgment of the court, therefore, is wholly void.

It is insisted that the defendant is precluded by consent or acquiescence from making objection at this time.

In the first place, consent cannot confer jurisdiction upon a tribunal incompetent to try the cause. *School Trustees* v. *Stocker*, 13 *Vroom* 115.

Nor could consent confer jurisdiction upon a competent tribunal to hear and determine a case in a manner wholly inconsistent with judicial principles, or a manner inconsistent with the principles and methods of the common law that define the jurisdiction of the court.

The case before us differs from *Flannagan* v. *North Hudson County Railway Co.*, 28 *Vroom* 236, and now pending in this court.

In that case the court held that the Common Pleas, being a competent court, capable of acquiring jurisdiction over the parties and the subject-matter, did, in fact, acquire it by the statutory transfer from the Circuit, in effect, consented to by

the parties. The court said that consent could not confer jurisdiction, but that mere irregularity in the mode of acquiring it could be waived. The judgment, therefore, of the Common Pleas was valid.

In the present case the proceeding is entirely different. Here there is no judgment of the Circuit Court, but merely the report of a trial had there. The Supreme Court has rendered a judgment in a case which is expressly declared in the record to have been tried before some other court.

The court has divided and delegated its judicial functions, and its proceedings were beyond its powers and wholly invalid.

In the second place, it does not appear that consent was given to the mode of trial or the mode of rendering judgment adopted in this case. All that appears is that a jury having been waived, the cause was, by consent of the parties, referred to Francis Child, the judge holding the county Circuit Court, for trial, and there is nothing in this to justify a trial before a jury, with Francis Child acting as judge of the Circuit Court. The fact that he was described as such judge does not imply that he was to act as judge in a Supreme Court case and exercise the judicial functions of a Supreme Court judge in charging a jury and admitting or refusing evidence.

There was, therefore, no consent given to the reference to a judge and jury, nor to a trial before such a peculiar tribunal as a jury presided over by a referee or a judge who is not a judge of the court.

Again, it is insisted that the decision of issues of fact has, in effect, been left by consent to the determination of a referee and that judgment has been entered on his report.

It is, no doubt, true that a judge of the Circuit Court might act by consent as referee, but the record in this case does not show that he has acted as referee or that judgment has been ordered to be entered on his report.

It shows that, after a jury had been waived, the case was tried by him and a jury, and that, on his report of the ver-

dict. of the jury, the Supreme Court justice assessed the damages in pursuance of the verdict, and that judgment was entered upon this assessment.

Trial of issues of fact by a referee is well known to the common law, but it is confined to matters of account, and it is provided by statute that if either party dissents he may demand a trial by jury, and that in such trial the report of the referee shall be *prima facie* evidence of the facts found, but the trial before the referee is the trial of the cause, and judgment is entered on his report.

In the present case the record shows that the trial was not before the referee, but before the justice of the Supreme Court, and that he assessed damages upon the report of a previous trial before the referee and a jury.

Such a delegation of the judicial. powers of a court is unprecedented and unconstitutional, and consent cannot give jurisdiction to a tribunal of that character.

It may be admitted that a judge of the Circuit Court may act as referee, by consent or otherwise, in cases properly referable to a referee, but if he does, the judgment must be entered upon his report and not upon an assessment of damages made by a judge upon the result of the trial before the referee.

The procedure shown in this record is, in fact, a delegation of the powers of the court to a person not a member of the court.

: There has been a trial by jury held by a person not authorized by the constitution to conduct trials by jury.

If such a power can be given to the Circuit judge it can be given to any person not a judge.

The Circuit judge is not a judge of the Supreme Court; he is not qualified under the constitution to act as such judge. The constitution provides for the qualifications of judges of that court, and no other judge can be authorized by the legislature or the court to act as a judge of that court. :

It has been suggested by the counsel for the defendant in error that the assignments of error referring to the *postea*

should be stricken out on the ground that the *postea* is not a part of the record.

There is no doubt the *postea* is a part of the record.

The very purpose of it is to put the fact that the case was tried by a jury and the verdict rendered by them upon the record.    3 *Black. Com.*, *ch.* 24, *p.* 387 ; *Lil. Ent.* 433 ; *Freem. Judg.*, *ch.* 5, *p.* 51.

It is because the *postea* does serve to put the facts therein stated upon the record that the courts devised the plan of having juries give special verdicts, in which the facts are stated in detail.    These facts being made by the *postea* a part of the record, the court, on a writ of error, can consider the facts to which the law is to be applied.    In this a special verdict differs from a special case, and it is because a special case does not appear in the *postea* that it cannot be considered in an assignment of errors.    *Pray* v. *Jersey City*, 4 *Vroom* 506 ; 3 *Black. Com.*, *ch* 23, *p.* 378.

The trial described in this *postea* is either a trial before the Circuit judge and a jury, or else a trial before the justice of the Supreme Court in which the verdict of a jury trial held before a person not a judge of the court is substituted for the evidence of witnesses.

If the real trial is before the Circuit judge and a jury, then we say it was before a tribunal not authorized by the constitution to be a court for the trial of issues joined in the Supreme Court, and having no power to render judgment. Neither the legislature nor the parties can give jurisdiction to another judge to act as a judge of the Supreme Court in the trial of cases before a jury.    It is not a case where the parties have come by consent into a court having jurisdiction of the subject-matter.    It is not, as we have said before, like the case of the transfer of the proceedings from the Circuit Court to the Common Pleas, under the act of March 26th, 1892, chapter 124, where the Common Pleas is given the power to pronounce judgment, and is thus substituted by consent for the Circuit Court.    *Flannagan* v. *North Hudson Railway Co.*, *supra*.

It is a case in which the record remains in the Supreme Court, and the functions of the judge are transferred to another man, who, although he is a judge, is not a judge of that court, and is not a judge in the legal sense at all. Neither he nor the jury can have jurisdiction to try the cause, and the verdict is not the verdict of a jury and cannot be made the basis of a judgment.

If, on the other hand, the trial is really before the judge of the Supreme Court, then it is clear that there is no legal basis for the judgment. The verdict of a jury taken on a previous day, by a man not a judge of the court, cannot be lawfully made the basis of an assessment of damages by the court. It is not within the jurisdiction of the Supreme Court to give judgment upon the result of a trial by jury conducted out of court and not subject to the rules of the common law governing trials.

It is a proceeding wholly unknown to the common law, and not within the powers possessed by the court when the constitution was adopted.

If the statute is alleged as a justification, the answer is that no such statute is warranted by the constitution, and if we take the terms of the statute we find a provision that makes the proceeding still less defensible.

The statute declares that the verdict of the jury shall be taken as conclusive evidence on the issue before the Supreme Court justice. This takes away from the parties their right to a bill of exceptions. If the verdict is conclusive evidence, no exceptions taken at the previous trial before the Circuit judge can affect the validity of the act of the Supreme Court judge in making the assessment of damages. He cannot regard the exceptions and is bound by the verdict. No exception can be taken to his action in following the verdict, and the previous errors do not make his decision wrong, because he is only obeying the statute in following the verdict. He is entering the judgment as a judgment of the Supreme Court by direction of the statute in a case never heard or determined in that court.

Nothing that the Circuit judge does at the jury trial is to be assigned as an error of law in the justice of the Supreme Court who, on this theory, really tries the case. There can be no error in law assigned to the rulings of a man who is not a judge of the court.

In the case of a referee, provision is made for exceptions to his report, and the matter is reviewed by the Supreme Court judge or by a jury trial, but under this statute and in these proceedings no provision is found whatever for a review of errors of law made at the trial. The proceeding, therefore, is not within the practice or jurisdiction of the court.

Authority to the Supreme Court to send issues of this kind to the county for trial was given in the ordinance of Lord Cornbury, made in 1704, directing one justice of the Supreme Court, if need should require, to go over the circuit once a year and hold and keep the Supreme Court in certain counties.

A statute relating to the holding of Courts of Oyer and Terminer and General Jail Delivery and Nisi Prius in the several counties of this state was passed November 20th, 1791. The next act, entitled "An act concerning the Supreme and Circuit Courts," was passed March 9th, 1798, and there was a supplement to that approved February 16th, 1799. These acts were repealed by the act of June 6th, 1799 (*Pat. L., p.* 393), and this is the statute on which the present jurisdiction of the court stands.

Under these ordinances and under this statute, authority was given the court to cause issues joined in the Supreme Court to be tried in the counties by judges of the court.

This power and jurisdiction was established before the adoption of the constitution and cannot be affected by legislation.

The jurisdictions of all the constitutional courts are established as they existed antecedently to the date of the constitution. *Harris* v. *Vanderveer*, 6 *C. E. Gr.* 425; *Central Railroad Co.* v. *Tunison*, 26 *Vroom* 501.

The Circuit Courts were established before the adoption of the present constitution. It was by the act of February 14th,

1838.· *Pamph. L., p.* 61.   Both the Circuit Courts and the Supreme Court had established jurdictions and defined powers before the adoption of the constitution, and it is not competent for the legislature to transfer the powers and functions of one to the other, either in whole or in part, and the statute, therefore, which attempts to give such authority is invalid.

For the defendant in error, *Samuel Kalisch.*

I. The assignment of errors should be stricken out on the ground that they are frivolous.

The writ of error in this case brings up for review the judgment of the Supreme Court.   There was no bill of exceptions, the case having been reviewed by the Supreme Court on a rule to show cause.   The plaintiff in error is, consequently, limited to assign errors upon the record.   There are two errors assigned.   The plaintiff in error, in a circumlocutory way, for the first time makes an attempt to attack the constitutionality of a law of March 9th, 1893, by going outside of the record proper of the Supreme Court to show that the Supreme Court had no jurisdiction to give judgment. The first assignment of error purporting to be assigned upon the record is invalid for the following reasons :

*First.* The assignment is multifarious. ·

*Second.* It contradicts the record.

*Third.* Because it distinctly appears that the parties, by consent, submitted the controversy to a court of general jurisdiction.

*a.* The assignment is multifarious.

It has been held in this state that an assignment which is multifarious will be stricken out.

In *Associates of the Jersey Company* v. *Davison, 5 Dutcher* 418 (Court of Errors and Appeals), Chief Justice Whelpley says : " The assignment of errors is a pleading filed by the party complaining of the errors of the judge, and each assignment should be single, and not multifarious, for that reason. *Oliver* v. *Phelps, Spenc.* 183, by Chief Justice Hornblower ;

*Coxe* v. *Field,* 1 *Gr.* 218; *Williams* v. *Shepherd, Id.* 78; *Ludlam* v. *Broderick,* 3 *Id.* 275."

The plaintiff has grouped together in this assignment several distinct matters of law and fact which should have been made the subject of distinct assignments.

*b.* It contradicts the record.

An assignment of error which contradicts the record is bad. *Field* v. *Gibbs, Pet. C. C.* 155; 1 *Arch. Pr.* 250; 2 *Tidd* 1226; 1 *Strange* 684; 2 *Ld. Raym.* 1414; 1 *Wils.* 85.

The averment in the assignment that judgment was given in pursuance of a report made by Francis Child, esquire, a judge of the Circuit Court of the county of Essex, &c., is not borne out by the judgment record.

The record flatly refutes the assignment.

*c.* Because it distinctly appears that the parties, by consent, submitted the controversy between them to a court of general jurisdiction.

The Circuit Court, by the constitution of this state, is a court of common law jurisdiction. Section 5, placitum 2, page 41, of the constitution provides: "The Circuit Courts shall be held in every county of this state by one or more justices of the Supreme Court or a judge appointed for that purpose, and shall in all cases within the county, except in those of a criminal nature, have common law jurisdiction concurrent with the Supreme Court."

The Circuit Court had jurisdiction of the subject-matter in controversy and obtained jurisdiction of the parties by their consent.

"When a court has jurisdiction of the subject-matter of a suit, and facts are stated in the proceedings sufficient to give it jurisdiction as to the parties, if the defendant appears and confesses the facts or tacitly admits them by pleading to the merits, he cannot afterwards assign for error want of jurisdiction." *Davis* v. *Packard,* 6 *Wend.* 327.

In the same case, on page 334, Chancellor Walworth says: "Although a party, by consent, cannot give jurisdiction to a court which had no jurisdiction before, yet if it had general

jurisdiction over the subject-matter, and the defendant either resides out of the jurisdiction or has some privilege which exempts him from the jurisdiction, he may waive that privilege if he chooses to do so; and in a superior court of general jurisdiction, if he neglects to object before he has answered to the merits of the cause, he will be forever precluded."

In *North Hudson County Railway Co.* v. *Flannagan,* 28 *Vroom* 236, which, among other things, involved the validity of proceedings of a case tried in the Common Pleas, which had been originally brought in the Circuit Court, and by it transferred for trial to the Court of Common Pleas, under the act of 1892, without objection, Mr. Justice Van Syckel, who delivered the opinion of the court, says : " The question whether the Circuit Court can, without the consent of a party, hand a case down to the Pleas is not presented now. The case would have been triable in the Pleas if originally brought there; the subject-matter of the controversy was within the jurisdiction of that court. It is not a question as to the jurisdiction of the trial court, but a question as to the mode in which jurisdiction was acquired. Jurisdiction cannot be conferred upon a court by mere consent, but an objection to the mere mode of the acquisition of such jurisdiction may be waived. The defendant engaged in the trial without objection, and thereby waived any right he might have had to the manner in which he was brought into that court to answer to the plaintiff's claim. The law is well settled that he cannot, after attempting to obtain a favorable result there, deny the right of the court to try the cause.

" Where a court has general jurisdiction of the subject-matter of the action, defendant cannot, after joining issue, object to the jurisdiction on the ground that he is not properly before the court." *Wilson* v. *City of Scranton,* 141 *Pa. St.* 621 ; *Ogden* v. *City of Philadelphia,* 143 *Id.* 430 ; *Larkin* v. *City of Scranton,* 29 *Atl. Rep.* 910.

In *Paulison* v. *Halsey,* 9 *Vroom* 493, Mr. Justice Dixon says : " The only evidence which the court can have of what occurred at the Circuit is by the *postea* or bills of exception.

There are no bills of exception in this cause, and the *postea* shows that the jury tried and rendered their verdict, upon the issues raised by the Pleas. * * * This court cannot look beyond that *postea* for information as to what was in fact done at the Circuit."

The *postea* in the case under consideration shows that everything that was done at the Circuit was done by the consent of the parties.

By the judgment record it further appears that the controversy was submitted by the parties thereto to the Supreme Court at Trenton, no objection being made to the jurisdiction of the court to pass upon the merits or law of the case, and there, after due deliberation, the court adjudged that the verdict be set aside and a new trial ordered, unless the plaintiff remit from the said verdict the sum of $5,000, which the plaintiff below accepted. I am incapable of perceiving how the plaintiff in error can go behind this record of the Supreme Court and assign error after having submitted the law and facts in controversy to the Supreme Court upon a motion for a new trial without making any objection to the regularity of the proceedings.

II. Errors cannot be assigned upon the *postea*.

The plaintiff in error, in his second assignment of errors, assigns error upon the *postea*.

Error cannot be assigned upon matter which is amendable.

1 *Arch. Pr.* 223, *tit.* "*Postea*," says : "The *postea* may be amended if erroneous. * * * Also, where the *postea* was lost the court ordered a new one to be made out from the issue roll and from the associate's notes." See *La Valle* v. *Electric Cutlery Co.*, 27 *Vroom* 62.

In *Peters* v. *Fogarty*, 26 *Vroom* 389, Mr. Justice Dixon says : "The mere fact that the trial judge has signed a *postea* does not preclude inquiry into its truth. If wrong it may be corrected. 1 *Arch. Pr.* 453. In *Doe* v. *Perkins*, 3 *T. R.* 749, the court said that the practice of amending the *postea* was as ancient as the time of Charles I., and that the amend-

ment might be made at any time, even after joinder in error assigned upon the judgment."

But even if error could be assigned upon the *postea*, it is well settled that nothing can be assigned for error which is aided by appearance or not being taken advantage of in due time.

In the case of *Earl of Lonsdale* v. *Littledale*, 2 *H. Black.* 307, the following questions were proposed to the judges:

*First.* Whether the Court of King's Bench has any jurisdiction to hold plea and personal actions against a peer of the realm and lord of parliament, who is neither in custody of the marshal nor is an officer or minister of that court, without the king's original writ issuing out of his Chancery to warrant such action.

*Second.* If the court has no jurisdiction, can it derive such jurisdiction from the acquiescence of the defendant by pleading to issue and proceeding to trial in an action commenced without the king's original writ?

In answer, Lord Chief Justice Eyre stated the unanimous opinion of the judges that the first question would have admitted considerable doubt if the objection had been made in an earlier stage of the cause, and that the cases of Say *v.* Lord Byron and Gosling *v.* Lord Weymouth were not to be considered as decisive authorities on the subject, but that, after pleading in chief, it was too late for the defendant to object to the jurisdiction of the court. See, also, 2 *Tidd* 1226.

The *postea* shows that this case was referred by the Supreme Court judge to the Circuit Court, by the consent of the parties, and that a jury was waived, &c., according to the statute.

It appears that the parties went to trial in the Circuit Court without any objection to the proceeding.

The record shows that the case was on review of the law and the facts before the Supreme Court in banc, and no objection was raised as to the validity of the proceedings at the Circuit.

The plaintiff in error is, therefore, precluded from assigning error either on the *postea* or the judgment record.

III. The validity of the act of March 9th, 1893 (*Pamph. L., p.* 158), or the title of the judge who tried the cause cannot be questioned in this proceeding.

The plaintiff in error attempts, in an indirect way, to try the title of the judge who held the Circuit Court, to the office which he holds.

As has been before observed by the court, section 5, placitum 2, page 41, of the constitution, a Circuit Court shall be held in every county, by a Supreme Court judge or a judge appointed for that purpose; " and " the Circuit Court " shall in all cases within the county, except in those of a criminal nature, have common law jurisdiction, concurrent with the Supreme Court." The Circuit Court is a constitutional court. It is a court of general jurisdiction. The right of the judge to exercise the functions of a Circuit Court judge cannot be questioned in a collateral proceeding. No matter how imperfect or invalid the title of the judge may be to the office which he holds, it can only be questioned in a direct proceeding. Holding the office by color of law, he cannot be considered as an usurper. His acts as a judge *de facto* are valid.

In *State, ex rel. Mitchell,* v. *Tolan,* 4 *Vroom* 201, Mr. Justice Depue says: " Premising that an officer *de facto* is one who exercises the duties of an office under a color of right, by virtue of an appointment or election to that office, as distinguished on the one hand from a mere usurper of an office, and so on the other from an officer *de jure,* the acts of an officer *de facto* are valid so far as the rights of the public or third persons are concerned, and neither the title of such officer nor the validity of his acts, as such, can be indirectly called in question in a proceeding to which he was not a party. *Town of Plymouth* v. *Painter,* 17 *Conn.* 585; *Mayor, &c.,* v. *Tucker,* 1 *Daly* 107; *Hoagland* v. *Culvert, Spenc.* 387; *People* v. *Collins,* 17 *Johns.* 550; *People* v. *Stevens,* 5 *Hill* 617, 630; *People* v. *White,* 24 *Wend.* 325."

See *State* v. *Carroll,* 38 *Conn.* 449, where Chief Justice Butler, in his opinion, collects a number of English and American cases confirming the above statement of the law.

IV. The act of 1893, under which this cause was tried at the Circuit Court, is a valid act.

By section 5, placitum 2, of the constitution of New Jersey (*Rev., p.* 41), it is provided.:

" The Circuit Courts shall be held in every county of this state, by one or more of the justices of the Supreme Court, or a judge appointed for that purpose; and shall in all cases, within the county, except in those of a criminal nature, have common law jurisdiction, concurrent with the Supreme Court," &c.

By section 2, placitum 1, of the constitution (*Rev., p.* 43), it is provided how the Supreme Court justices shall be appointed, &c.

The act of March 27th, 1874 (*Rev., pp.* 216, 217), to which the act of 1894 is a supplement, is an act which, among other things, defines certain powers of the Supreme and Circuit Court judges.

The act of 1893 does not in anywise impair the authority of the Supreme Court judges in the exercise of such powers devolved upon them as Circuit Court judges, by the act of 1874, but simply enlarges the powers of Circuit Court judges.

Section 2, placitum 9, of the constitution (*Rev., p.* 43), provides: "All other officers, whose appointments are not otherwise provided for by law, shall be nominated by the governor and appointed by him, with the advice and consent of the senate, and shall hold their offices for the time prescribed by law."

Thus, by the constitution of this state, there is express authority for the appointment of a Circuit judge. He is a judicial officer created by the constitution. The legislature may prescribe the term of office.

Section 1 of the act of 1893 makes provision for the appointment of three Circuit judges, fixes their term of office, and follows the constitutional provisions respecting them, with faithful precision.

Section 2 of the act conferring on them " the same authority, power and jurisdiction, by virtue of their said office as is

now vested by the common and statute law in the several justices of the Supreme Court, by reason of their being judges of said Circuit Courts," is simply a reaffirmation of the constitutional provision before alluded to, whereby the jurisdiction of the Circuit Court is made concurrent in all cases with that of the Supreme Court, except in those of a criminal nature.

Section 3 of the act provides as to the manner in which Supreme Court issues may be disposed of before said judge of said Circuit Court, &c.

It makes the consent of parties an essential prerequisite, to a reference of a Supreme Court issue, to the Circuit judge. It is not contended for by the plaintiff in error that such consent was not had, but that such consent did not aid in giving the court jurisdiction. A moment's consideration will reveal the fallacy of this contention. The Circuit Court being a constitutional court, and of concurrent jurisdiction with the Supreme Court, had undoubted jurisdiction of the subject-matter in controversy. It only needed to acquire jurisdiction of the parties to make its jurisdiction complete. This it did by the consent of the parties.

The trial of Supreme Court issues at the Circuit has, by the Supreme Court judges, been in this state the subject of statutory regulation.

Section 4, placitum 20, of "An act relative to the Supreme and Circuit Courts" (*Rev., p.* 216), provides: "The Chief Justice or one of the justices of the Supreme Court, before whom the Circuit in every county of this state shall be held, shall try all issues which have been or shall be joined in the Supreme Court, or in any other court, and brought into the Supreme Court to be tried," &c.

I can find nowhere in the constitution any restriction upon the legislature to pass an act permitting the Supreme Court issues to be tried at the Circuit by a Circuit judge appointed for that purpose, especially where such transfer is to be made by the Supreme Court or any one of the justices thereof.

Section 3 of the act of 1893 simply regulates the exercise

of such common law powers which already existed in the Supreme and Circuit Court judges—for instance, to refer matters of account in controversy, &c.

It has been a matter of statutory regulation in this state. See *Rev., pp.* 875, 876, §§ 176–179, *tit.* "*Practice Act.*"

At common law submissions to arbitration were entered into by a rule of the court in which the cause was pending, but by the act of 9 and 10 *Wm. III.*, c. 15, it was provided that submissions could be made where there was no cause depending by having the submission to arbitration entered into it by a rule of any of the courts of record. See 2 *Burr.* 701 ; 3 *Christ. Black.* (*ed.* 1794) 15, 16.

In speaking of the act of William III., Lord Mansfield (2 *Burr.* 701) said that the act was only declaratory of what the law was before, in cases where there was a cause depending in the court.

The statute relating to arbitration in this state is analogous in its terms to that of William III., and is, as that statute was, an extension of the common law respecting submission to arbitration. See *Rev., p.* 34.

Thus we observe that at common law and by the statutory policy of this state it has always been left to the litigants to submit their differences, by consent, under the supervision of a court of competent jurisdiction.

Section 3 of the act does not enforce any of its provisions upon the litigants. It simply permits them to consent to adopt a certain procedure pointed out by the statute.

The act of 1893 is liberal in its provisions. It not only makes it necessary that the procedure pointed out therein shall be adopted by the consent of the parties, but it gives either party the right, after the trial thereof, to have the law and facts reviewed by the Supreme Court.

No constitutional right or privilege is violated by the act. The right of trial by jury is preserved and can only be waived by consent of the parties to the controversy.

The act does not deprive the Supreme Court of any of its constitutional or common law powers.

MARCH TERM, 1895.                 673

*28 Vroom.*                    Newark Pass. Ry. Co. v. Kelly.

*First.* The reference must be made and have the sanction of the Supreme Court justice.

*Second.* The reference can only be had by consent of the parties to the issue.

*Third.* The reference is made to a court which has concurrent jurisdiction with the Supreme Court.

*Fourth.* The Supreme Court retains supervisory power over the result.

There is nothing in the constitution to hinder the legislature from authorizing the Supreme Court, or one of the justices thereof, from referring an issue in the Supreme Court for trial in the Circuit Court, before a Circuit Court judge, without the consent of the parties. It is the settled law of this state that an indictment found in Oyer and Terminer, a court constituted by a Supreme Court justice and a judge of the Court of Common Pleas, may be *certioraried* to the Supreme Court, and by the latter court be referred to the Circuit Court for trial before a Circuit Court judge. See *Rev., p.* 98, § 4, *tit. "Certiorari."*

This act was passed in February, 1709, and no one has the temerity to question its constitutionality. See *Pat. L., p.* 350.

V. There is no substance in the objection to the *postea.* The *postea* is drawn according to the mode pointed out by Mr. Justice Depue in *La Valle* v. *Electric Cutlery Co.,* 27 *Vroom* 62, and which is as follows: "The *postea* on an issue out of this court, tried before the Circuit judge, under the statute, should, after setting out the preliminary proceedings—the consent of the parties, the waiver of a jury, the reference to the judge holding the county Circuit for trial, the trial before the latter and the report of the result of the trial to the justice—conclude with a certificate to the effect that the said result being reported to him, he, the said justice, did thereupon find," &c.

The opinion of the court was delivered by

MAGIE, J.    This writ of error brings up the record of a judgment recovered in the Supreme Court by Kelly, the

defendant in error, against the Newark Passenger Railway Company, the plaintiff in error.

Errors are assigned upon the record alone.

The record discloses that the issue joined came on for trial in the county in which the venue was laid, and the parties consented (1) to waive a trial by jury, and (2) that the cause be referred to the Circuit judge for trial, pursuant to the statute in such case made and provided. It also appears that the justice of the Supreme Court holding the Circuit in that county referred the cause to the Circuit judge, who reported a trial thereof before him, with a jury, resulting in a verdict for Kelly, assessing his damages at $12,000, whereupon the Supreme Court justice found the railway company guilty and assessed Kelly's damages at that sum.

It is manifest that this procedure was taken under the provisions of section 3 of the "Act supplemental to an act entitled 'An act relative to the Supreme and Circuit Courts,' approved March twenty-seventh, eighteen hundred and seventy-four, and also for the appointment of three judges to hold said Circuit Courts and to define their powers," which supplemental act was approved March 9th, 1893. *Pamph. L., p.* 158.

Whether in causes tried under the provisions of that section, the *postea* need set out the reference to the Circuit judge and his report, may be open to question. It seems to have been considered by the Supreme Court that those facts ought to appear in the *postea*. But it may be argued that, as it is not the province of the *postea* to set forth the evidence upon which the Supreme Court justice trying an issue without a jury bases his finding, the statement of the Circuit judge's report, which, by the provisions of the section, is mere evidence, is unnecessary and out of place in a *postea*. But the question was not argued, and no opinion will be expressed thereon.

It may also be suggested that the question presented by plaintiff in error would have been raised more appropriately by an objection to the admission by the Supreme Court justice of the report of the Circuit judge as evidence.

MARCH TERM, 1895.  675

*28 Vroom.*          Newark Pass. Ry. Co. v. Kelly.

But it will be assumed that the record properly discloses the procedure at the trial and opens for review the judgment rendered thereon.

The assignment of errors grounds the objection of plaintiff in error solely upon the alleged unconstitutionality of the act of 1893 above cited, or at least of the provisions of its third section.

It is first argued that the provisions in question interfere with and diminish the constitutional jurisdiction of the Supreme Court, in that they permit an issue triable only in that court to be tried by or before a Circuit judge. But this is an erroneous statement of the scope of the provisions which distinctly provide for the trial of the issue before the Supreme Court justice without a jury, in the manner customary in this state since the passage of the "Act to simplify the pleadings and practice in courts of law," approved March 17th, 1855, the eightieth section of which has become section 176 of our present Practice act. *Rev., p.* 875. The propriety of such a trial is incontestable. *Columbia Delaware Bridge Co.* v. *Geisse,* 9 *Vroom* 39, 580; *Blackford* v. *Plainfield Gas Light Co.,* 14 *Id.* 438.

The provisions of the third section of the act of 1893 do not compel a party to submit the issue to be tried by another tribunal. But they do permit the parties, by their mutual consent, to adopt a mode of procedure whereby the truth of the facts at issue may be determined and such determination may have the force of conclusive evidence before the Supreme Court justice. The record shows a consent of parties to a reference pursuant to the statute, and this includes consent that the judge's report should be conclusive evidence before the Supreme Court justice. I find it impossible to discover anything in such provisions for giving effect to the agreement of parties out of accord with the constitution.

But it is further argued that these provisions deprive a party of his right of exception to the rulings of the Circuit Court upon the trial of the issue, and are for that reason obnoxious to the constitutional requirements. It is unneces-

sary to decide whether the proposition on which this argument is based is correct. Assuming it to be true that the act makes no provision for exceptions to the rulings of the Circuit judge, I find no right of the party thereby violated. Any party may permit errors in the course of a trial to pass unchallenged, if he desires to do so. He may, therefore, consent to a mode of trial which may deprive him of an opportunity to except, or to have a review of such exceptions otherwise than by a rule to show cause, which the act of 1893 provides for. *Runyon* v. *Hodges,* 17 *Vroom* 359; *Children's Home Association* v. *Hall,* 18 *Id.* 152.

Such legislative permissions as are found in this act remove no safeguard of the rights of individuals. If anyone is thereby deprived of a right, it is with his consent. Every right may be preserved by a refusal to consent.

It may be further added that the procedure complained of may otherwise be vindicated. The Circuit Court possessed, by law, jurisdiction over the cause of action disclosed by this record. While consent cannot confer upon a tribunal a jurisdiction not vested in it by law, yet parties may, by consent, permit a tribunal to acquire, though irregularly, a jurisdiction which the law has conferred upon it. *North Hudson County Railway Co.* v. *Flannagan, ante p.* 236.

Upon this principle I perceive no error in permitting parties, by their consent, to recognize a jurisdiction in the Circuit Court to try an issue in the Supreme Court, and that the determination of the Circuit Court upon that issue should be conclusive evidence in the Supreme Court.

The result is that the judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, SIMS. 12.

*For reversal*—None.