## FITZPATRICK v. ROGAN

### (No. 1050; Decided January 10, 1922; 203 Pac. 245)

APPEAL AND ERROR—RECEIVERS—BILL OF EXCEPTIONS—PLEADINGS—
ANSWER—ACCOUNTING—PARTNERSHIP—DISSOLUTION OF PARTNERSHIP—RECORD ON REVIEW—JOURNAL ENTRY—ORIGINAL PAPERS
TRANSMITTED ON APPEAL.

1. In the application of the rule requiring a bill of exceptions to bring a motion into the record for purposes of review, there is no difference between a written and an oral motion.

2. In an action for accounting and dissolution of partnership the petition praying that in the meantime defendant be enjoined from interfering with or disposing of the partnership property and effects, and in a separate paragraph asking for a receiver, both may be considered together as a prayer for injunction and receiver *pendente lite*.

3. Where the complaint for a partnership dissolution and accounting prayed for the appointment of a temporary receiver, the plaintiff's right to such appointment based on facts alleged in the complaint and admitted by the answer can be determined on writ of error without any bill of exceptions.

4. In a suit for dissolution and accounting, an answer which alleged that there had been an inventory of the property, and that defendant had offered to buy or sell his interest on the basis of such inventory, and that there had been an accounting between the parties, *held* to refer to the inventory as the accounting so as not to allege a partnership accounting, which generally imports an adjustment of the dealings or accounts of the parties.

5. In a suit for a partnership dissolution and accounting, an answer denying defendant had been conducting the business in his own name in violation of plaintiff's rights and alleging defendant was conducting his own business in which plaintiff had no interest *held* based on defendant's legal conclusion of the effect of his notice of dissolution.

6. ·A provision in agreement that on the dissolution by death, withdrawal, or act of either partner the remaining partner should have the right to purchase the interest of the other as determined by the last inventory and accounting does not require the other partner either to buy or sell on dissolution by act of one, but the partner not responsible for the dissolution may rely on his right to termination of the business and distribution of the firm assets.

7. Even though a partnership was dissolved by the notice given by one partner of its intention to dissolve it, the mere fact of dissolution did not change the status of the partnership property, but it still remained firm assets subject to disposition in proceedings between the partners.

8. Where one partner gave notice of dissolution and offered to buy or sell on the basis of the last inventory, but in the meantime took possession of the firm property and ousted his partner, the ousted partner is entitled to have a temporary receiver appointed for the property pending accounting.

9. A partner who wrongfully took possession of the business, ousting his partner therefrom, and thereafter conducted it in his own name, cannot object to the appointment of a receiver for the firm assets on the ground that the conduct of the business by the receiver would result in great loss to him.

10. A motion filed in the court below and the ruling thereon, including a motion for the appointment of a receiver, is not a part of the record proper under Comp. St. 1920, § 5903, and cannot be reviewed on writ of error unless brought into the record by bill of exceptions.

11. A journal entry of the allowance of a bill of exceptions is not necessary to make the bill a part of the record.

12. The provision of Comp. St. 1920, § 6376, for an application on the filing of a petition in error to have the original papers sent up includes only such original papers as are properly a part of the record in the court below.

Error to the District Court of Sweetwater County, Hon. John R. Arnold, Judge.

Action by John F. Fitzpatrick against Frank P. Rogan and wife for accounting dissolution of partnership also for injunction and receivership pending suit. From an order denying the application of plaintiff for the appointment of a receiver pending dissolution and accounting, plaintiff brings error.

*T. S. Taliaferro* and *W. A Muir,* for plaintiff in error.

The defendants below contended that in view of the terms of the partnership agreement they could, by serving notice of their election take over and purchase the interests of plaintiff in error, thereby terminating the partnership and take exclusive possession of all of the partnership assets. Plaintiff below contended that he was not required to accept the offer of defendants to purchase his interest at the price offered but was entitled to a receiver pending his suit for dissolution and an accounting. The trial court refused to appoint a receiver and thereby denied the rights of plaintiff in error and ignored a well settled principle of law. (Anderson v. Lemon, 8 N. Y. 236; Mitchell v. Redd, 63 N. Y. 123.) The taking over of the entire assets of the partnership deprived plaintiff below of the value of the good will of an established business as well as the value of the real estate. The petition itself prays for a receiver pending the dissolution and accounting of the firm business, plaintiff having been excluded from possession was entitled to a receiver. (Hattenstein v. Conrad, 9 Kans. 298.) This Kansas case is a clear exposition of the principles of law that should control the present controversy. A fair reading of the petition and pleadings would show that a receiver *pendente lite* was applied for. We believe the question of error is fairly presented here on the record proper and that a bill of exceptions is unnecessary for review. We feel that the authorities cited in the former opinion of May 3, 1921, in case No. 1016 are not germane to the real question here. In this case we rest entirely upon the principle

of the petition, asking for a receiver *pendente lite;* the petition is a part of the record proper. The fact that this part of the prayer of the petition was brought to the attention of the trial court by a written motion cannot alter the situation. The Ohio cases dealing with the question as to what is, or what is not, a part of the record proper have not gone so far as to say that an error that can be fairly drawn from that which is proper in the record will not be considered because of the manner in which it is brought to the attention of the trial court, whether it be by written or oral motion. Moreover, Section 6376 Comp. Stats. 1920 provides for bringing up the original papers. A motion is an original paper. (Garner v. State, 23 O. St. 196.) There was no bill of exceptions, but the court, under the authority of Section 6376 (R. S. O. 6716) considered the motion. (Sleet v. Williams, 21 O. St. 82; Whittaker's Annot. Code, 7th Ed. 5903 (R. S. O. 5334, new section 11607) states that it is unnecessary to include a motion in the bill of exceptions. (9 CD520; 17 CC 152, 2 CC156.)

*Brown* and *DeNise,* for defendants in error.

Plaintiff was not entitled to a receiver upon his showing. Defendants conformed to the letter of the partnership agreement with reference to the retirement of either of the partners. The appointment of a receiver is discretionary. (34 Cyc. 21.) Such an appointment is an equitable execution and the power to appoint is a delicate one which should be executed with considerable caution. (23 R. C. L. 10.) The partnership was terminated on March 20th, 1920. Every change in personnel of a firm works a dissolution and in fact creates a new partnership. (20 R. C. L. 954.) The agreement between the parties authorizes either of the partners to withdraw upon thirty days notice. This was done and it has the effect of dissolving the partnership. There was no showing of fraud. There was no showing that the property in question was in danger of loss or injury, destruction or waste or removed from the jurisdiction of the court. The contentions of plaintiff in error were

adjudicated adversely to him in case No. 1016; the motion
for receiver and order denying the same are not properly
before this court for review, there being no bill of exceptions
bringing the same into the record. This point has been de-
cided repeatedly by this court adverse to the contentions
made by plaintiff in error.

*T. S. Taliaferro* and *W. A. Muir,* in reply.

The application for a receiver was heard upon the peti-
tion and answer below. Confiscation and conversion of as-
sets is admitted by the answer.

A mere denial in the answer may not be invoked to de-
feat the appointment of a receiver. (Anderson v. Lemon,
8 N. Y. 236; Lacy v. Hall, 37 Pa. State, 360; Forrer v.
Exors., 29 Gratton 134; Mitchell v. Reed, 61 N. Y. 123.)
The inventory and accounting alleged to have been made
and agreed upon is a disputed issue. The case presents
a situation where one partner has by serving a written no-
tice on the other partner, proceeded to take possession of
all partnership assets, to conduct the business and retain
all the benefits thereof, while the partner who has been
wrongfully eliminated from the business has been denied
a remedy of any sort by the courts. Upon the admission in
the answer of defendants in error, the ruling and order of
the court below should be reversed and the cause remanded
for proper action in accordance with the equity and justice
of the case.

POTTER, Chief Justice.

This case is here on error for the review of an order deny-
ing an application of the plaintiff in error, the plaintiff be-
low, for the appointment of a receiver of partnership prop-
erty and assets as a provisional remedy pending the action
brought by the plaintiff for dissolution and accounting. A
prior proceeding in error for the review of the same order
was dismissed by this court without prejudice. (See Fitz-
patrick v. Rogan, 197 Pac. 565.)

The primary reason stated for dismissing the former proceeding was that the overruling of the plaintiff's motion for a new trial was the only error assigned, and no such motion had been brought into the record by bill of exceptions, the only manner in which, according to our rules and the long established practice in this jurisdiction, such a motion with the ruling thereon and exception thereto can be made a part of the record for consideration in a proceeding in error. And we expressed a doubt as to the sufficiency of said assignment of error for the further reason that a motion for a new trial might not have been necessary or proper to present the question again in the district court or to preserve an exception to the order complained of, so as to render the assignment sufficient under our rule applicable to proceedings in error that the ruling upon each matter properly presented in the court below by a motion for a new trial shall be sufficiently questioned in this court by an assignment that the court erred in overruling such motion.

It was further stated in the opinion, however, that a consideration of the question presented upon the merits of the cause would be prevented for the further reason that the motion upon which the hearing was had in the court below had not been brought into the record by a bill of exceptions; and the principle was stated, citing decisions of this court in support thereof, that a bill was necessary to make the motion a part of the record. And in that connection it was said that while the petition contains a prayer for the appointment of a receiver, it does not ask for such appointment *pendente lite,* and it did not appear that the application was made upon that prayer, but, on the contrary, that it was made by motion, after the issues had been made up by the filing of the necessary pleadings.

Defendants in error have filed a motion to dismiss this proceeding in error upon the ground that the record is insufficient to authorize a review of the order complained of, and our former opinion aforesaid is referred to in the motion as stating the reasons more particularly. And the

cause has been submitted upon that motion and also upon the merits. The principal reasons that were stated for dismissing the other proceeding do not apply to this, for the assignments of error are different in this proceeding, as will presently appear, leaving as the only ground upon which the motion can rest, the failure to bring into the record by bill of exceptions the motion upon which the hearing for the appointment of a receiver was had, the ruling thereon and the exception to the ruling. But for reasons which will be stated in explaining our view of the case as now presented, we think the motion to dismiss should be denied.

The petition in error in the present proceeding specifically assigns as error the order refusing to appoint a receiver *pendente lite,* alleging it to be contrary to law, and that plaintiff's application should have been granted upon the facts admitted by the pleadings. And it is contended that the prayer for the appointment of a receiver is sufficient to cover or include such appointment *pendente lite,* that it was so intended and was so understood by the parties.

The briefs, as well as the record in the former proceeding, have been filed also in this, and an additional brief has been filed by each of the parties, that of defendants in error being in support of their motion to dismiss, and the additional brief of plaintiff in error explaining in his behalf that when the petition in error in the former proceeding was filed it was intended to have a bill of exceptions prepared and allowed, and when that was abandoned upon a belief that a bill was unnecessary counsel overlooked the fact that a bill of exceptions was referred to in the petition in error, and that the ruling upon the motion for a new trial was the only matter assigned as error; and contending that the record as it stands is sufficient for a consideration of the errors now assigned, upon substantially the following grounds: That the petition in the action, fairly construed, shows that a receiver was applied for "*pendente lite;*" that all the parties so understood the matter, as shown by the fact that the motion was filed only at the hearing, and the

notice in answer to which the parties appeared at the hearing stated that the application was to be made upon the issues formed by the pleadings; that while such notice may not be in the record properly, the court would be justified in using the information given by it to ascertain the situation as understood and acted on by the parties; that a formal motion was not necessary but an oral motion would have been sufficient to call the court's attention to the application; that the plaintiff rests his case entirely upon the pleadings, positively verified, as exhibiting the error complained of. And, finally, that if the pleadings clearly show error, both parties conceding by the briefs that the matter was heard only upon the pleadings, that should be sufficient to authorize a consideration of the alleged error, without requiring a bill to show the written or oral request or motion bringing the application on for hearing. We think it should be said in passing, though we do not deem it material since both parties appeared at the hearing and no question is here made as to the notice, that if the notice could be considered it would show that it stated that the application would be upon the petition, answers, and replies, "and upon such oral testimony as the plaintiff may deem necessary."

Such additional brief of plaintiff in error seems also to question the correctness of the former decision in holding that the motion can be brought into the record only by a bill of exceptions, and to assert that it had not been so held by any previous decision of this court and that the Wyoming cases cited in the opinion in support of the principle are not in point. That matter will be discussed later, and we need only say at this point concerning it that the view entertained by counsel as to the effect of the previous decisions of this court relating to the necessity of a bill of exceptions to bring a mere motion into the record in a proceeding in error differs from our understanding of those decisions and the practice settled thereby, and that, with respect to the rule, requiring a bill of exceptions to bring a motion into the record, there is no material difference between a

written and an oral motion. If a written motion filed in the cause does not become a part of the record without a bill certainly an oral motion would not. This is illustrated by a case in Illinois, where said rule prevails; the court refusing to consider a motion orally made for the reason that the bill of exceptions, which recited the fact that the motion was made and the ground thereof, failed to show any ruling thereon, and the rule applicable to such a motion was stated by quoting the following from a supreme court decision: "The only error assigned is that the court erred in striking the plea from the files, and it has been repeatedly held that such action of the court cannot be considered unless the motion, decision and an exception thereto are presented in a bill of exceptions, so that the error, if any, may appear from the record." (Lowitz v. McKittrick, 215 Ill. App. 611.)

So far at least as the motion aforesaid is to be considered as the application for the appointment of a recever and as showing the grounds of the exception to the order appealed from we remain of the opinion that it is not properly in the record. Yet we think that, regardless of that fact, the case may be considered and disposed of upon the merits, and for the following reasons:

In the first place, we are satisfied upon a closer examination of the petition that the prayer for the appointment of a receiver may reasonably be construed as an application for such appointment *pendente lite*. After having disposed of the cause upon other grounds, we were led to the remark in the former opinion to the effect that the petition did not ask for the appointment of a receiver *pendente lite*, by the unnecessary though not improper separation of the prayer for relief into numbered paragraphs; and the prayer for a receiver found in a paragraph numbered 5 was considered as standing alone, or as not connected with the last preceding paragraph numbered 4, asking an injunction *pendente lite*. Counsel for plaintiff in error, in their additional brief, quote these two paragraphs together without the separating

number, but as connected sentences of the same paragraph. As thus quoted, the two paragraphs read as follows:

"That in the meantime, the defendant, Frank P. Rogan, be enjoined from collecting or receiving, or in any manner interfering or intermeddling with or disposing of the debts, moneys, or other property, good will or effects of said partnership. That a receiver of said partnership, moneys, property, good will and effects may be appointed with the usual powers and duties."

The last sentence asking for a receiver is paragraph 5 of the prayer in the petition. In the paragraphs immediately preceding 4 and 5, it is prayed: 1. That certain real estate be decreed to be held in trust for the partnership by the defendants. 2. That the partnership may be dissolved and an account be taken of all dealings and transactions of the partnership, and of all moneys received and paid by plaintiff and defendant Frank P. Rogan, respectively in relation thereto. 3. That the partnership property, both real and personal, be sold together with the good will of the partnership business; and that the debts and liabilities of the partnership be paid, and the surplus, if any, be divided between the plaintiff and defendant partners according to their respective interests.

In view of the prayer of the petition for a dissolution and an accounting and the prayer following that for an injunction "in the meantime" restraining the defendant partner from interfering with or disposing of the partnership property and effects, which the petition alleges to be in his exclusive possession, it does not seem unreasonable to read the prayer for a receiver as connected with the immediately preceding prayer for an injunction, and as relating to the same purpose, that of preventing the disposition or improper use of the partnership property and effects by the defendant partner during the pendency of the action.

That being the effect of the prayer for a receiver as we are now convinced, it appears further that the facts upon which the right of the plaintiff to have a receiver appointed are based, and which are claimed to be admitted by the

pleadings, would require such appointment *pendente lite,* if sufficient to require such appointment at any time. Also, that the contentions of both parties upon the merits are based exclusively upon the pleadings, the brief of defendants in error stating that the application for a receiver was heard upon the petition and the separate answers of the defendants, so that, in disposing of the matter upon the merits, by considering the points made by the briefs, and the facts therein referred to, the determination must necessarily rest upon the pleadings. And, further, as the parties are respectively bound by the allegations and admissions of their pleadings, it would seem to be immaterial whether any evidence was produced at the hearing, if upon such allegations or admissions definite action, either to grant or deny the application, was required of the court in the exercise of a sound judicial discretion.

We shall, therefore, consider the merits so far as to determine whether or not the facts admitted by the pleadings show the plaintiff to have been entitled to the order appointing a receiver at the time of the hearing of the matter in the court below.

The pleadings show that the partnership had been entered into by written agreement between the plaintiff and the defendant, Frank P. Rogan, for carrying on the business of "undertakers" at Rock Springs, Wyoming; each contributing one-half of the capital, and the parties to share equally in the profits and losses of said business, and that said Rogan was the managing partner on a fixed salary; said salary being fixed by the partnership agreement at $80 per month. The wife of Rogan, the other defendant, was made a party because of certain allegations of the petition relating to real estate alleged by the petition to have been purchased in her name by the defendant partner in violation of the agreement and his obligation as such partner. But it is not alleged or claimed that she was at any time a member of the partnership. The partnership agreement is dated April 24, 1919, and provides that the partnership is organized for a period of five years from and

after April 1st, 1919; the agreement reciting that the business had theretofore been established and conducted under the firm name of Fitzpatrick & Rogan; that either partner may retire from the partnership at any time upon thirty days notice given to the other partner of the intention to do so; that on the first day of October and the first day of April of such year, an inventory of the stock shall be taken, a complete statement made of the condition of the partnership, and an accounting had between the parties, and the profits or losses of the preceding year shall be then divided and paid or contributed, share and share alike. It provides further that upon the dissolution of the partnership ''by reason of the death, withdrawal, or other act of either partner'' the remaining partner shall have the right to purchase the interest of such partner in the business, assets and good-will by paying the value of such interest ''as determined by the last inventory and accounting,'' and that upon the final dissolution of the firm by lapse of time or otherwise, ''the said business shall be wound up, the debts paid, and the surplus divided between the partners equally, share and share alike.''

The petition was filed on May 19, 1920, and alleges, after stating the partnership agreement, that pursuant thereto, the parties entered upon the business of the partnership, and this is admitted by the answer of the defendant partner. It also alleges a continuance of the said business from the time of said agreement, without any other agreement being made in relation to said partnership, and the answer admits that the partnership business was continued up to and including March 20, 1920, but not after that date, and admits also that no other agreement was made, except that an inventory was taken and an accounting had on March 12, 1920, and the value of the partnership assets then determined and agreed upon. The other material averments of the petition are substantially as follows:

That on or about March 20, 1920, the defendant partner ousted the plaintiff from the partnership business and the possession thereof, and attempted to convert the same to his own use, and has since said date refused to allow plaintiff any part in the said partnership business or to account to him therefor or for the good-will of the same. That on March 17, 1920, said defendant sent to the plaintiff a written communication to the effect that on March 20, 1920, he intended to retire from the partnership, and thereupon instead of retiring from said business, he took possession of the same, ousted the plaintiff, and has since refused to make any accounting to the plaintiff of the business, its inventory, assets, profits and losses, or good-will, or of its stock of merchandise of the value of more than $12,000. That said defendant has received over and above his due proportion of the profits large sums of money, the exact amount being unknown to the plaintiff, and continues to collect the debts due the partnership and to appropriate the moneys collected to his own use, and is conducting the business in his own name, in violation of plaintiff's rights and to his irreparable damage and loss. That he has further violated the partnership agreement by paying himself as manager the sum of $125, which we understand, and the parties seem to have understood, to mean a monthly payment of that sum, with the intent and purpose of causing the plaintiff to become dissatisfied and to cause his withdrawal from the business as conducted by said defendant.

The answer of the defendant Frank P. Rogan admits that since a stated date, he has paid himself as manager of the partnership a salary of $125 per month, and that it was in violation of the partnership agreement, but denies that it was done fraudulently or with the intent of causing the plaintiff to become dissatisfied or to force him to withdraw from the business or the partnership, and alleges that the plaintiff was informed of the amount of salary the defendant was drawing and raised no objection, but as-

sented thereto; and said defendant, by his answer, offers to return to the partnership or to the plaintiff the amount so drawn in excess of $80 per month "to avoid any controversy concerning said salary." Said answer denies that on or about March 20, 1920, the defendant ousted the plaintiff from the business and the possession thereof, or attempted to convert the same to his own use, but alleges that said partnership business was on that date dissolved and terminated in full compliance with the partnership agreement; that on or about March 12, 1920, a full, complete and. true inventory was taken of the partnership assets; that said inventory showed the value of the said assets to be $11,437.69; and the inventory, or a copy of it attached to the answer, shows that it embraced personal property only, cash on hand, and bills receivable. The said answer further alleges that upon the taking of said inventory, the defendant then and there offered to buy or sell on the basis thereof, and that the plaintiff refused to buy said defendant's interest on the basis of the inventory, but offered to sell the interest of the plaintiff to said defendant on the basis of the inventory plus the sum of $2281.11, or for a total sum of $8000. It is then admitted by the answer that since the 20th day of March, 1920, said defendant has refused plaintiff any voice, share or interest in any business conducted subsequently to that date; and alleges that on January 27, 1920, and subsequently on February 5, 1920, the said defendant sent written communications to the plaintiff that he intended to retire from the partnership, and on or about March 12, 1920, the plaintiff, in conjunction with the defendant, did take an inventory of the assets of said partnership and have an accounting with the defendant. Said defendant further admits by his answer that he has continued to collect the debts due the partnership, but denies that he has appropriated any money or thing of value belonging to the partnership to his own use, or that he is conducting the business in his own name in violation of the plaintiff's rights,

admitting, however, "that he is conducting his own busi-
ness in his own name," in which the plaintiff has had no
interest since March 20, 1920.

In a separate defense, which may have been intended
as a cross-petition, said defendant alleges substantially the
facts above stated as to the notice of his intended retire-
ment, the making of the inventory, and the continuance of
the business by him in his own name and as his own busi-
ness, and, further, that he is ready and willing to either
buy or sell the partnership assets on the basis of said in-
ventory and in addition thereto to pay to the partnership
or to the plaintiff any amount which the plaintiff or the
partnership may be entitled to for the salary drawn in
excess of the amount provided for by the agreement. And
that defense closes with a prayer to the effect that a decree
be entered directing the plaintiff to transfer to the de-
fendant all the plaintiff's right, title and interest in and
to the partnership and the assets thereof, upon the pay-
ment to the plaintiff by said defendant of the sum of
$5718.89, plus $100 for excess salary. The plaintiff filed
a reply, denying generally each allegation of said answer
not admitted by the petition. It is unnecessary to refer
to the answer of Mrs. Rogan, the other defendant, since
it relates solely to the averments of the petition respect-
ing the purchase of real estate, which the petition, upon a
second cause of action, prays may be decreed to be held in
trust for the partnership, and is not, we think, material
upon the question presented upon the application for a
receiver of the partnership property, moneys and effects,
except, perhaps, to limit the scope of the receivership, if
ordered, to the personal property and other admitted
assets of the partnership.

The petition alleges as to such real estate, in the first
cause of action, that, in violation of the partnership agree-
ment, the defendant partner purchased the premises, de-
scribing the same, upon which the partnership business
was being conducted, taking title in the name of his wife,

and then increased the rent to be paid by the partnership, with intent to injure the plaintiff and the partnership business, and to force said business out of the premises and establish thereon a competing business to be conducted by said defendant and his wife, notwithstanding that plaintiff had frequently urged the purchase of the premises for the partnership and offered to advance the necessary funds for that purpose. In a second cause of action it is charged that the purchase was in fact made by said defendant, acting for the partnership. The alleged intent and purpose of said purchase, that the plaintiff had urged a purchase for the partnership and offered to advance the funds therefor, that the title was taken in Mrs. Rogan's name, and that the purchase was for the partnership, are all denied by the answer, which alleges that plaintiff had been repeatedly advised by said defendant partner to purchase said premises, but had refused and neglected to do so, either for himself or the partnership; that the rent was raised from $75 to $100, but was not wrongfully or corruptly done or with intent to injure the partnership, or to force it or the business out of the premises.

The pleadings are each verified positively by the oath of the party, in the usual form of such verification. And there does not appear to be any substantial conflict between the petition and the answer of the defendant partner upon the facts, except such as relate to the purchase of the real estate aforesaid. They differ slightly in some other respects, as, for example, in the date of the notice to plaintiff of said defendant's intention to retire from the partnership, the purpose or intent of defendant in paying himself a larger salary than that fixed by the agreement, and the fact alleged by the answer that plaintiff had knowledge of such payments and assented thereto. But we think that difference immaterial with reference to the question now presented. And the answer alleges the taking of an inventory of the partnership assets, which

is not referred to in the petition, but must be accepted as a fact upon this hearing.

The averment of the answer, however, that there was an accounting is evidently based alone upon the fact of the taking of said inventory, since no other fact, or act of either party, is alleged to show an accounting or from which the fact may be inferred. The answer does not allege a settlement, or that a balance due from one to the other was agreed upon, or even that an account was rendered showing such a balance, and makes no reference to liabilities, profits or losses, or the amount of capital originally contributed. And, certainly, an accounting between partners must usually embrace something more than a mere inventory of partnership assets. An accounting generally imports an adjustment of the dealings or accounts of the parties. (Apple v. Smith (Kans.), 190 Pac. 80; Harris v. Thompson, 61 Colo. 87, 156 Pac. 149; Turgeon v. Cote, 88 Me. 108, 33 Atl. 787; Whitewell v. Willard, 1 Metc. 216.)

While the answer denies that the defendant, since March 20, 1920, had been conducting the business in his own name in violation of plaintiff's rights, and alleges that his own business, in which plaintiff had no interest, was being conducted by him in his own name, it is apparent that the business theretofore conducted in the partnership name was being continued by the said defendant partner in his own name, and that the only difference between the parties in that respect, upon the pleadings, is in their contentions as to the legal effect of defendant's acts in giving notice and continuing the business; the defendant alleging, and claiming here, that, as a result of the notice of his intended retirement, the partnership was dissolved upon the taking of the inventory aforesaid, and the plaintiff alleging and claiming that the defendant was continuing the partnership business wrongfully in his own name. And we think it clear, not only from what is alleged in the answer, but from the fact that more is not alleged, that the partner-

ship property was being used by the defendant in the business continued by him, and that fact we think is practically conceded in the brief of defendants in error. A point made in the said brief to the effect that whether, upon considering all the circumstances, a greater injury would ensue from the appointment of a receiver, than from leaving the possession of the property undisturbed, or if any other consideration of propriety or convenience will render such appointment improper or inexpedient, a receiver will not be appointed, seems to be based upon the fact that the partnership property was used in the business conducted by the defendant. For, following the statement of the point, it is said that the trial court took the view that a greater injury would ensue from the appointment of a receiver in this case than by leaving the possession of the property undisturbed, and that the nature of the business, that of embalming, conducting funerals, etc., was such as to make the appointment inconvenient, improper and inexpedient, and that the court may have considered also the fact that Rogan was Coroner of the county, and that the work required of him as such was to some extent "interwoven with his undertaking business."

In thus contending that the partnership property should be left in the possession of the defendant partner, to be used in the business as conducted by him in his own name, and for his own benefit, counsel seem to have overlooked the provision of the partnership agreement that, upon the final dissolution of the firm by lapse of time or otherwise, "the said business shall be wound up, the debts paid, and the surplus divided between the partners equally, share and share alike." Defendant seems to have assumed that upon the failure of the plaintiff to take advantage of the provision of the contract permitting the remaining partner, upon a dissolution of the partnership, to purchase the interest of the retiring partner, he had the right, as retiring partner, to take and retain exclusive possession of the

partnership property and assets as well as the good-will of the business for his own benefit until a final settlement of the partnership affairs. But that is an unwarranted conclusion on his part. That contract provision does not impose a duty upon the remaining partner to buy the interest of the retiring partner, but merely confers the right to do so upon paying the value of such interest as determined by the ''last inventory and accounting.'' Nor does it impose any duty upon the remaining partner to sell his interest to the retiring partner upon that or any other basis, or deprive him of the right, during or upon a dissolution of the partnership, to a share in the property and profits thereof, or, upon a dissolution, to have the business wound up, the debts paid, and the surplus divided between the partners, as expressly provided by the contract. That would necessarily require that the property be handled, cared for, or disposed of for the benefit of both of the parties. And if the partnership was not dissolved by defendant's act, the plaintiff would be entitled to his share of the profits and to complain of his exclusion from the joint possession of the property and business, as he has done by this action for a dissolution and accounting. Assuming, but, of course, without deciding, that the partnership was dissolved as a result of the notice of the defendant's intended retirement, the property and assets of the partnership continued to be partnership property after as well as before the dissolution. (Karrick v. Hannaman, 168 U. S. 328, 18 Sup. Ct. 135; Zimmerman v. Harding, 227 U. S. 489, 33 Sup. Ct. 387.) In the last case cited, where one of two partners notified the other that she had dissolved the partnership relation, and published a notice of the dissolution in the local papers, and that she would thenceforth conduct the business for her own benefit, and thereupon assumed entire ownership and possession of the business and property, excluding the other partner therefrom, the court said:

"Whether the partnership had been effectually dissolved by the declaration of Mrs. Zimmerman on August 9, 1911, or not, her action in excluding Harding from joint possession and control until the affairs had been wound up was under either hypothesis indefensible. The partnership property continued to be partnership property, after as well as before dissolution."

And the opinion in that case clearly intimates, we think, a disapproval of the action of the trial court denying a receiver *pendente lite.*

In the other case cited, the court said: "Even if the partnership should be considered as having been actually dissolved at that date, yet the dissolution did not put an end to the plaintiff's right to his share in the property and the profits of the partnership." And in an earlier case, the same court said: "However the question may be decided, whether one partner may by his own mere will dissolve a partnership formed for a definite purpose or period, it is clear that upon such a dissolution one partner cannot appropriate to himself all the partnership assets, or turn over the share of his partner to another with whom he proposes to form a new partnership." (Pearce v. Ham, 113 U. S. 585-593, 5 Sup. Ct. 676.)

Both of the parties desire a dissolution of this partnership. Defendant insists that it is already dissolved, and the plaintiff prays for a dissolution and upon just grounds, as determined by the pleadings, if there has not been a dissolution; and the partnership property and assets are in the exclusive possession of the defendant, who is using the same in a business conducted by him in his own name as a continuation of the business previously established and conducted by the partnership, and is collecting the debts due the partnership. Under these circumstances, we think the application for the appointment of a receiver should have been granted. (2 Lindley on Partnership, 2nd Am. Ed. 1194-1202; 23 R. C. L. 30, 31; 30 Cyc. 474; Jones v. Weir, 217 Pa. St. 321, 66 Atl. 550, 10 Ann. Cas. 692; Cole

v. Price, 22 Wash. 18, 60 Pac. 153; Martin v. Wilson, 84 Wash. 625, 147 Pac. 404; Duley v. Duley, (Wash.) 191 Pac. 828; Reed v. Beals, (Fla.) 82 So. 234; Hottenstein v. Conrad, 9 Kans. 435.)

It is said in Lindley, page 1194, that if a partnership is already dissolved, a receiver is usually appointed almost as a matter of course: In High on Receivers, 4th Ed., § 515, it is said: "When both partners are desirous of a dissolution of the firm, and the circumstances of the case as disclosed by bill and answer, are such as seem to require a dissolution, the bill charging and the answer admitting that plaintiff is excluded from the partnership premises, sufficient cause is presented for a receiver to collect the firm debts and take charge of the assets." And in Riddle v. Whitehill, 135 U. S. 621, 10 Sup. Ct. 924, the court, by Mr. Chief Justice Fuller, said:

"Of course, where the partnership expires in accordance with its terms, or is dissolved by agreement, such partner as a general rule has an equal right to the possession of the partnership property, and if they cannot agree as to the disposition of it, a court of equity will appoint a receiver to collect and apply the effects. Each partner has a right to have the partnership assets applied in liquidation of the partnership debts, and to have the surplus assets divided, and each may insist on a sale, and that nothing shall be done except with a view to wind up the concern."

The defendant is hardly in a position entitling him to urge very strongly against the appointment of a receiver that it would greatly injure his business, for whatever injury might ensue would be the result of his own act in dissolving or making necessary a dissolution of the partnership, without any alleged or apparent ground or reason except his own desire for a change, and thereupon taking exclusive possession of the partnership property and assets and using the same for his own benefit, or in what he alleges to be his own business, instead of proceeding to have

the partnership business wound up as provided by the agreement in case of a dissolution. (Zimmerman v. Harding, supra.) The order complained of must, therefore be reversed.

We are not informed respecting the condition of the cause in the court below at this time, but if it remains there undisposed of upon its merits, or in a condition shown by the pleadings with the defendant partner in exclusive possession of the property and assets, or the proceeds thereof, without a complete settlement of the partnership affairs having been made, our order will direct that in such case a receiver be appointed with all such usual powers as may be necessary to protect the interests of the parties pending the final disposition of the cause.

We should prefer to close the opinion here. But since the correctness of our statement in the opinion in the former case that the motion was not properly in the record is doubted, if not directly challenged, by counsel for plaintiff in error, we are not satisfied, nor do we think it fair to counsel, to leave the matter without further discussion explaining more fully our reasons for the rule stated, and particularly the grounds upon which we are unable to agree with counsel's argument that the rule is not sustained by the previous decisions cited in its support, and that a different rule should be adopted allowing a motion to be considered in a proceeding in error, as a part of the record without a bill of exceptions.

We think that the decisions cited upon the proposition in the former opinion are all in point, and that counsel misunderstands the effect thereof and what was intended thereby to be decided. Each of them clearly hold that the motion involved in the case was not in the record because not brought into it by a bill of exceptions; and that such motion could not be considered for that reason. But all of our decisions on the question were not, by any means, exhausted by the citations in the former opinion. Believing the question to be thoroughly settled here and no longer

open to doubt or misunderstanding, we felt content to cite
a few only of the cases bearing upon the proposition, but
which, nevertheless, in our opinion, declare the principle
applicable to the motion in this case. The writer, before
becoming a member of this court many years ago, under-
stood the practice requiring a bill to bring a motion into
the record had been established by the decisions of the terri-
torial Supreme Court, in view of the provisions of our
statute designating the matters constituting the record
proper and requiring a bill of exceptions when the grounds
of objection to a decision excepted to do not appear in the
entry thereof. The earlier territorial decisions, commencing
with several at the July 1871 term, (Murrin v. Ullman, 1
Wyo. 36, and others), while holding a bill of exceptions
embracing the motion for a new trial, the ruling thereon,
and the exception thereto, necessary to present for consid-
eration an exception to the overruling of such motion, did
not state definitely the reasons therefor, but they were evi-
dently based either upon the statute, or upon the rule at
common law, which was and is also the general rule in this
country, that motions are not part of the record proper.
(2 Cyc. 1053-5, 1058, 1070; 4 C. J. §§ 1703, 1718, 1730,
1769; 2 R. C. L. 127, 130; § 2 Ency. Pl. & Pr. 273; Tidd's
Pr. 478, 390, 775.; Lenox v. Pike, 2 Ark. 14; St. Croix L. Co.
v. Pennington, 2 Dak. 467, 11 N. W. 497; Clifford v. Hudson
Co. Oyer & Terminer, 61 N. J. L. 493, 39 Atl. 909; Pace
v. Lanier, 32 Fla. 291, 13 So. 360; Sergeant v. Bank, 12
How. (U. S.) 190; Eldorado Coal & Min. Co. v. Mariotti,
215 Fed. 51, 131 C. C. A. 359; Bateson v. Clark, 37 Mo. 31;
Greenwell v. Hess, (Ill.) 131 N. E. 626.)

The early territorial decisions having been followed by a
court rule requiring a bill to show the motion for a new
trial, the ruling thereon and exception thereto, as well as
the making of the motion in the court below as a condition
precedent to the consideration on error of any matter which
might properly be included in such a motion, the validity
of the rule was assailed in two cases, (Johns v. Adams Bros.,
2 Wyo. 164, and U. S. v. Trabing, 3 Wyo. 144, 6 Pac. 721.)

And in both cases the validity of the rule was upheld, the opinion in U. S. v. Trabing being delivered by Chief Justice John W. Lacey, shortly after he had become a member of the court, succeeding Chief Justice Sener, who had delivered the main opinion in Johns v. Adams Bros. During the course of the opinion, it was said by Judge Lacey, respecting the matter now under consideration: ''The bill of exceptions is still necessary to show the existence of the ground laid in the motion for a new trial; and also, under our practice, to bring that motion upon the record, and to show the exception taken to the ruling upon it.'' The decisions are numerous since that time declaring the same principle; and, in view of our statute prescribng the contents of the record proper, they are applicable, we think, to other motions filed in the cause. For if that or any other statute is to be construed as making a motion, when filed in a case, a part of the record, such a construction would apply also to a motion for a new trial, and there would be no reason or necessity for requiring by rule of court or otherwise that such motion, the ruling thereon and exception thereto, shall be embraced in the bill of exceptions. And that it was so understood by the court is shown, we think, by the decision in Perkins v. McDowell, 3 Wyo. 328, 23 Pac. 171, involving a motion for a change of venue as well as a motion for a new trial, which are mentioned together in the opinion as governed by the same rule, the court saying that a motion for a change of venue and a motion for a new trial are not pleadings, and can only become a part of the record by being incorporated in a bill of exceptions.

To sustain the rule it must have been found not to be inconsistent with the statute, for the assault upon it in the two cases above cited was upon the ground that it was in conflict with the laws of the territory, though in the Trabing case it was assailed only in respect of the provision requiring the making of a motion for a new trial in the court below. The later decisions, commencing with Van Horn v. State, 5 Wyo. 501, 40 Pac. 964, decided in 1895, base the

conclusion principally upon the statute aforesaid, which is now section 5903, Comp. Stat. 1920, the court by Chief. Justice Groesbeck in that case saying: "The judge must include in the bill of exceptions all matters not a part of the record in order to make them of the record, and neither counsel nor the clerk of the court may do this. *  *  * What is not made by the statute a part of the record of the trial court, must go in the bill and be identified by the judge of the court, the same as the other records are."

And in Boulter v. State, 6 Wyo. 66, 42 Pac. 606, in an opinion by the same learned judge, in which the other justices concurred, after referring to the fact that the transcript contained no bill of exceptions but contained copies of certain motions made during the trial and after its termination, including a motion for a new trial, it was said:

"For nearly a quarter of a century, the practice has been followed, as directed by the rules and decisions of this court, to insert a motion for a new trial in a bill of exceptions, certified to by the judge, and not to recognize or consider any matters on appeal, arising during the trial, which were not a part of the record proper, except such as were embodied in the bill of exceptions. Our rule is but the general doctrine that a motion for a new trial must be incorporated in the bill of exceptions in order to be preserved for review on appeal." (Citing 3 Ency. Pl. & Pr. 400.) Thereupon, referring to the statute aforesaid, which was then Sec. 2681, Rev. Stat. 1887, providing that the records of the court in civil cases shall be made up from the petition, the process, the return, pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court, and to the provision of the criminal code that the taking of bills of exception are governed by the rules established in civil cases, it was further said:

"The record proper in the cause, either civil or criminal, does not contain a motion for a new trial, as it does not fall within any of those enumerated matters, *  *  * And the only method whereby such motion can become a part of the record is by order of the court or judge making it so,

when it is embodied in the bill of exceptions, which is made a part of the record by such order but not spread at large upon the journal.''

Again, in Bank v. Anderson, 7 Wyo. 441, 53 Pac. 280, speaking for the court, the writer hereof said, concerning a motion for a new trial: ''The motion is not made a part of the record by statute, although the pleadings are, hence the necessity for preservation by bill of exceptions to give it a place in the record.'' And, in another opinion by the writer in which the other justices concurred, it was said: ''It is well settled that motions are not in the record on proceedings in error unless embraced in a bill;'' the particular motions involved in that case being a motion to strike the motion for a new trial from the files, and a motion to amend the motion for a new trial. (Harden v. Card, 14 Wyo. 479, 85 Pac. 246.)

We think counsel clearly mistaken in the view that the decision in Perkins v. McDowell, supra, with reference to a motion for a change of venue, was based alone upon the fact that the affidavit in support of the motion was not included in the bill. The opinion in that case was by Chief Justice VanDevanter, Associate Justices Corn and Saufly concurring, and clearly shows that the decision was based also upon the fact that the motion for a change of venue was not properly in the bill. We quote the concluding words of the court upon that subject: ''These motions not being made a part of the record, the rulings thereon cannot be considered by this court.'' It appears also from the opinion in that case, as indicating the general understanding of the practice, that counsel for plaintiff in error had attempted to bring each motion into the bill, but had done so only by reference, and that was held to be insufficient.

That case has been followed with reference to an application for a change of venue or judge in Syndicate Imp. Co. v. Bradley, 6 Wyo. 171, 43 Pac. 79, and Littleton v. Burgess, 16 Wyo. 58, 91 Pac. 832. In the first of the two cases last cited a motion to dissolve an attachment was held not a part of the record unless brought into it by a bill of exceptions.

In LeClair v. Hawley, 18 Wyo. 23, 102 Pac. 852, the court
declined to consider a motion upon which a party defend-
ant had been added for the reason that the motion had not
been incorporated in the bill of exceptions, and the bill
made no reference to such motion, the ruling upon it or the
exception thereto.   In Claussen v. State, 21 Wyo. 505, 133
Pac. 1055, it was held that a motion to require the state to
elect upon which of two theories it would proceed was not
before the court for the reason that it was not incorporated
in the bill, nor the evidence introduced on the trial.   In
Sawin v. Pease, 6 Wyo. 91, 42 Pac. 750, the propriety of
bringing a motion to strike out parts of the petition into
a record by bill was recognized; the court holding that a
statement in the bill containing the motion that the plain-
tiff excepted to the ruling sustaining it, was sufficient to
show the exception, the bill having been made a part of the
record.

We know of no decision of this court, and none has been
cited, where it was held as to any motion in a proceeding
in error that the motion was a part of the record proper
or without being embraced in a bill of exceptions, or where
any such motion has been considered in such a proceeding,
unless brought into the record by a bill.   But we know it to
have been the general practice to incorporate motions in a
bill of exceptions, with the ruling thereon and the excep-
tion thereto, when sought to have alleged error in such rul-
ing reviewed in this court; and that has been the practice
as to motions relating to provisional remedies.   It is of
course possible that a motion may have been considered,
though not made a part of the record by bill, through fail-
ure on the part of the court to notice the defect in the rec-
ord.   And indeed, that occurred when the case of Perkins
v. McDowell, supra, was first decided, that decision being
found in 3 Wyo. 203, 19 Pac. 440, and the fact is referred
to in the later and final opinion in the cause, above men-
tioned, the court saying:   ''This cause was heard by this
court, and an opinion rendered therein, at a former term.
No briefs having been filed by the defendant in error, the

imperfections in the bill of exceptions, which is contained in the record, were overlooked, and the attention of the court having been called to this, a re-hearing was granted.''

Under a statutory provision in Oklahoma, describing what shall constitute the record in the same language as our own statute, that state having the Ohio code, it has been uniformly held that motions, rulings thereon and exceptions thereto, are not part of the record unless embraced in a bill of exceptions. (Fisher v. U. S., 31 Pac. 145; Black v. Kuhn, 6 Okla. 87, 50 Pac. 80; Tribal Development Co. v. White, 28 Okla. 525, 114 Pac. 736; Stonebraker-Zea Cattle Co. v. Hilton, 34 Okla. 225, 124 Pac. 1062.) Quoting the statute, in Tribal Development Co. v. White, supra, it is said: ''Under this statute, it has been held that motions and orders thereon are not part of the record proper, and can be made part of the appeal record only by bill of exceptions or case-made, the rule being stated in the case of Menten v. Shuttee et al., 11 Okla. 381, 67 Pac. 478, as follows: 'Motions presented in the trial court, the rulings thereon, and exceptions are not properly part of the record, and can only be preserved and presented for review on appeal by incorporating the same into a bill of exceptions or case-made. The record proper in a civil action consists of the petition, answer, reply, demurrers, process, rulings, orders, and judgments; and incorporating motions, affidavits, or other papers into a transcript will not constitute them a part of the record unless made so by a bill of exceptions. Motions and proceedings which are not part of the record proper can only be presented for review by incorporating them into a case-made, or by preserving them by bill of exceptions and embracing them in the transcript.''

A motion to revoke the appointment or to discharge a receiver is held not to be part of the record unless included in a bill of exceptions. (Bank of Dexter v. Stoddard Co. Bank, 169 Mo. 74, 68 S. W. 902; Cottrell v. Aetna Life Ins. Co., 97 Ind. 311.) Also that a bill is necessary to bring into the record a motion for judgment on the pleadings.

(Sternberg v. Levy, 159 Mo. 617, 60 S. W. 1114, 53 L. R. A. 438.)

Counsel refer to a different practice in Ohio. We are and have been aware of the practice in that state to consider a motion for a new trial, and some other motions, apparently as in the record without a bill, though not affidavits in support thereof. So far as the decisions of the supreme court of that state are concerned, the principle that they are in the record proper does not seem to have been directly stated. But there is an early decision to the contrary. (Harvey v. Brown, 1 Ohio. 268.) In 1887, after the practice had been settled here requiring a bill to bring a motion for a new trial, the ruling thereon and the exception, into the record, it was decided by one of the Circuit Courts of Ohio that it was not necessary for the bill of exceptions to recite the filing of the motion for a new trial, the overruling of it or the exception, for the reason that the motion was a part of the record and the ruling and exception would therefore be sufficiently shown by the journal entry of the ruling noting the exception. That case is Fleischman v. Shoemaker, 2 O. C. C. 152; the discussion of the question appearing on page 156. But the case shows that the question was then a doubtful one in that state. The opinion states: "This is a question which has been suggested in argument to us once or twice, and it is apparent that members of the profession have different views upon the subject, and we have heard that some one of the courts of the state has held that it is necessary that these matters should appear upon the face of the bill itself. We, however, are of the opinion that it is not necessary." That case was called to our attention and considered in Freeburgh v. Lamoureux, 12 Wyo. 41, 73 Pac. 545, decided in 1903; we then said that we were not disposed to overrule Johns v. Adams Bros., Perkins v. McDowell, Boulter v. State, and other cited decisions, and that we were satisfied that they proceed upon a correct interpretation of the statute; but that if we entertained a contrary opinion, the rule of practice established by them had stood too long to be lightly

overturned by judicial decision, and, further, that the decision in Fleischman v. Shoemaker was evidently induced upon the theory that the motion constituted a part of the record proper, "and hence, in view of a contrary rule well established here, it cannot be accepted as authority upon the question." We then cited decisions from several states requiring that the motion appear in the bill, with the order overruling it and the exception, usually under statutory provisions not differing essentially from the provisions of our statute.

But our attention has now been called to another Ohio Circuit Court decision, or rather to a note in Whittaker's Annotated Code citing it together with Fleischman v. Shoemaker upon the point stated in the note that to bring a motion before a reviewing court it must be made a part of the record, but it is not necessary that it be included in the bill of exceptions; that note appearing under the section of the code corresponding to section 5903 of our latest compilation, and known as section 5334 of Ohio Rev. Stat., or, as re-numbered, section 11607. The citations in the note are: 9 C. D. 520; 17 C. C. 152; 2 C. C. 156; 42 O. S. 449. The case cited from 42 O. S. merely cites and quotes the section, without deciding anything relating to the question before us. The 2 C. C. citation is Fleischman v. Shoemaker, above mentioned, and the two other citations refer to Barclay v. Salmon, reported in each of the volumes, and decided in 1898 by the Fayette Co. Circuit Court. The question in that case was whether a bill was necessary to bring before the reviewing court an affidavit filed in the court below for a change of judge. It was said in the opinion that affidavits filed in support of a motion cannot be considered unless made part of the record by a bill of exceptions, but that it is not necessary to bring the motion before a reviewing court to include it in the bill, "although it is not required by section 5334 of the Revised Statutes to be made a part of the record." That an affidavit showing the disqualification of the judge is not in support of some motion or application, "but as an original paper in the case, upon its being so

filed and the fact noted upon the trial docket, whether true
or not, it disqualifies the judge to act in that case, and if he
does act, it is one of the original papers which may be filed
with the petition in error to exhibit the error complained
of, under Sec. 6716 of the Rev. Stat.''

If it was intended by that to hold that when filed, and,
as required by statute, noted upon the docket, the affidavit
becomes a part of the record, not alone from the fact of its
being filed but because noted on the docket, it is not in dis-
agreement with any of our decisions. But if it was intend-
ed to hold that merely as an original paper filed in the
cause it was upon the record without a bill, then it conflicts
squarely with Perkins v. McDowell, and the two other deci-
sions of our court following it, as to an application for
change of venue or judge, two of which cases were decided
prior to the date of that decision, and certainly it cannot
be accepted as even persuasive authority, especially since
it is not a decision of a court of last resort, or the highest
court in the state. If intended to hold that merely as an
original paper, not a part of the record proper, the affi-
davit could be properly brought before the reviewing court
by filing it with the petition in error under the Ohio sec-
tion substantially like our own, as it was prior to 1901, and
not essentially different from our present statute, except
the latter provides for an application and order for the
papers and journal entries upon filing the petition in error
instead of filing the same with the petition, as formerly,
then it is in conflict with a decision of another circuit court
in Ohio, and out of harmony, as we think, with several de-
cisions of the Supreme Court of that state, as well as con-
trary to our interpretation and understanding of the stat-
ute last mentioned. The circuit court decision we refer to
is Strauck v. Massillon Stoneware Co., 4 O. C. C. Rep. (N.
S.) 536.

In that case it was held; (1), that the court has jurisdic-
tion to review, vacate or modify a judgment of the court
of common pleas *only* for errors appearing upon the rec-
ord; (2) that the mere filing of a bill of exceptions does

not make it a part of the record, and is not a part of the record unless the court so orders; and (3), that the warrant for filing original papers in the reviewing court with the petition in error extends only to such papers as are a part of the record in the court below. And a motion to strike the bill from the files because not ordered a part of the record in the court below was sustained, basing the decision upon certain decisions of the Supreme Court of Ohio, to the effect that unless made a part of the record by order of the court below, a bill cannot be considered in the reviewing court, though filed with the petition in error as an original paper in the cause; viz: Felch v. Hodgman, 62 O. St. 312, 56 N. E. 1018; Riverside Rubber Co. v. Midland Mfg. Co., 63 O. St. 66, 57 N. E. 958. Other cases in Ohio are to the same effect. (Heffner v. Moyst, 40 O. St. 112; Hill v. Bassett, 27 O. St. 597.) And the decision in Strauck v. Massillon S. Co., is accepted as stating the correct rule, under the statute for filing the papers in the reviewing court, in Kinkead's Ohio Civil Procedure, published in 1915, it being said in the text, citing that case: "Only such original papers as were part of the record below should be filed. Those not part of such record are not properly files in the reviewing court." (P. 1048, sec. 1386.) The court say in Felch v. Hodgman, that "to enter upon an inquiry of review the bill *must be* a part of the record." And in Hill v. Bassett, the court say, after quoting the statute as amended provided for filing with the petition in error a transcript of docket and journal entries "together with the original papers and pleadings in the case" etc. that such transcript, "and such original papers and pleadings *as would properly enter into the record of the case*," are thus substituted for the transcript which the original section required to be filed by the plaintiff in error; that although among the papers attached to the transcript was a paper purporting to be a bill of exceptions, there was nothing to show outside the paper itself that it had been allowed and "made a part of the record," and it could not, therefore, be considered, since the court "can reverse a judgment of an inferior court

only for errors appearing on the face of the record.'' (See also Smith v. Board, 27 O. St. 44.)

It should, perhaps, be remarked here that in this jurisdiction a journal entry of the allowance of a bill is not necessary to make a bill a part of the record. (McBride v. U. P. Ry. Co., 3 Wyo. 183, 18 Pac. 635; Hogan v. Peterson, 8 Wyo. 549, 59 Pac. 162; Harden v. Card, 14 Wyo. 479, 85 Pac. 246.) The court said in the McBride case, after showing the difference in that respect between the Ohio and our statute: ''The allowance, signing, and perhaps filing, are what constitute it a part of the record, and no journal entry is necessary for that purpose.''

Our comments upon the Ohio decisions under the Code section 6716 of that state may sufficiently indicate our interpretation of the corresponding section of our statutes, now Sec. 6376 Comp. Stat. 1920, with reference to which counsel asks if the provision for an application and order for original papers upon the filing of a petition in error has nothing to do with the matter. But to make our position clear as to that, we think it proper to say further that we agree with the Ohio decisions in holding that the statute refers to and intends to include only such original papers as are properly a part of the record in the court below. And that has always been the understanding of the court as to said section. By section 6371 of our said compilation, as originally enacted and as amended in 1921 (Laws 1921 Ch. 145), it is provided that a judgment or final order of the District Court may be reversed, vacated or modified by this court ''for errors appearing on the record.'' And section 6376 provides for the filing with the petition in error of an application for an order directing the clerk of the district court to transmit to this court all such original papers in the case, and a duly authenticated transcript of all such journal entries, or other entries of record as the plaintiff in error may desire ''and as may be necessary to exhibit the error complained of;'' and that thereupon the clerk of this court shall issue such order, and when ''such original papers'' and transcript are received they shall be

and become a part of the record in the case in this court. Thus the original papers to be applied for and ordered here must be not only what the plaintiff in error may desire, but such as "may be necessary to exhibit the error complained of," thereby limiting the papers that may properly be included as part of the record here to such as are part of the record in the court below. The record of the trial court must be made in that court, and not here, and clearly it could not have been intended that by a mere application for an order from this court for certain original papers, the appealing party may make up a record for this court of matters not properly a part of the record in the district court.

The case of Barclay v. Salmon, supra, seems to be in accord with our decisions to the effect that a motion is not made a part of the record by statute, and, notwithstanding a different practice in Ohio, we think it more logical to require that a paper which is not part of the record proper shall be brought into it by bill to entitle it to consideration than to assume to consider it, although not embraced in a bill and not otherwise a part of the record.

We think it unnecessary to enter into a further citation of authorities, although we have at this time as well as heretofore examined with much care the decisions of other states upon the question, those declaring a different rule of practice from that adopted in this state being usually explained by a difference in statutory provisions. But we are satisfied that our practice requiring a bill to bring a mere motion upon the record, which is the result of an unbroken line of decisions covering a period of fifty years, should not be abandoned by judicial decision because of an occasional decision elsewhere seemingly not in accord with it.

Although this discussion has been extended beyond the limit within which the writer had expected to confine it, it has seemed proper to go into the matter thoroughly, hoping that it might be of service in making clear to counsel and the bar generally the court's position concerning the important question of practice presented.

As stated in concluding the discussion of the cause upon its merits, the order refusing to appoint a receiver will be reversed, and an order entered directing such appointment unless the cause has been so disposed of as to make that unnecessary.

*Reversed.*

Kimball, J., and Blume, J., concur.